CENTRAL FIBRE PRODUCTS CO. et al. v. HARDIN et al.

No. 7558.

Circuit Court of Appeals, Fifth Circuit.

March 20, 1936.

Rehearing Denied April 16, 1936.

Charles Kassel, and B. E. Godfrey, both of Fort Worth, Tex., for appellants.

C. O. McMillan, of Stephenville, Tex., and Sam Billingsley, of Fort Worth, Tex., for appellees.

Before FOSTER and SIBLEY, Circuit Judges, and DAWKINS, District Judge.

FOSTER, Circuit Judge.

Appellants are creditors who filed a petition ·for involuntary bankruptcy against H. H. Hardin and other creditors who thereafter intervened. The petition was filed on November 10, 1932. In addition to the necessary jurisdictional allegations and description of the various debts, the petition, in substance, alleges: That Hardin while insolvent committed the following acts of bankruptcy: (1) A receiver was appointed and put in charge of his property, on the 28th day of July, 1932; (2) that the said receivership was brought about or procured by Hardin and had the effect of a general assignment for the benefit of his creditors; (3) that he concealed or removed a part of his property with the intention to hinder, delay, or defraud his creditors; (4) that he had permitted creditors to obtain a preference by legal proceedings and did not within 30 days from the date of the judgment vacate such judgment.

The last two acts of bankruptcy charged are based on the following allegations of facts: Hardin's wife died, and her will, leaving him the bulk of her undivided share of the community property, was probated. On August 2, 1932, his three children filed a proceeding to set aside the probate of the will. Hardin made no defense and on the contrary gave evidence in support of the claim of his children, with the result that a decree revoking the order of probate and setting aside the will was entered. The effect of said decree was to place the title to one-half of Hardin's estate in the names of his children who were also creditors. This proceeding was collusive, and although more than two months had elapsed since the entry of the decree annulling the will, Hardin had taken no appeal from the judgment and had permitted it to become final as to him.

Hardin answered denying insolvency and praying for trial by jury. At the close of the evidence the petitioning creditors moved for a directed verdict, which was denied. The question of insolvency was submitted to the jury and resulted in a verdict that Hardin was not insolvent on the following dates: July 28, 1932, August 2, 1932, August 19, 1932, and November 10, 1932. The petitioning creditors moved for

judgment non obstante veredicto, adjudging Hardin a bankrupt, which motion was denied. A motion for a new trial was also overruled. This appeal followed. Error is assigned to the actions of the court above set out.

It appears that Hardin was a man past 79 years of age and was engaged in the wholesale and retail lumber business, owning and operating some 28 or 29 yards in various towns of Texas. He also owned ranches. He was estimated to be worth over $1,500,000. His business was not incorporated and he had no partner. He testified, in substance, that the reason he made no objection to the setting aside of the probate of his wife's will was he had intended giving his children their mother's share of the community. Later he found out from them that it was their intention to withdraw the property from the reach of his creditors, so far as the law would permit. He objected to that, and for the purpose of preserving his property for all creditors and to prevent its being sacrificed by forced sales at the instance of some creditors who had filed suits, he made no objection and assisted in the appointment of a receiver. The receiver appealed from the judgment of the probate court annulling the will and it was reversed.

The question of insolvency was submitted to the jury on conflicting evidence, which we need not review further than to say that there was substantial evidence before the jury tending to show that Hardin's assets at a fair valuation exceeded his debts. It was not error to deny the motion for a directed verdict.

■ The bill for the appointment of a receiver was in aid of the foreclosure of a mortgage and alleged solvency of Hardin but that his lands were burdened with liens and a receiver was necessary to prevent waste. The appointment of a receiver is not an act of bankruptcy unless on the ground of insolvency or the debtor is insolvent, Manufacturers' Finance Co. v. McKey, 294 U.S. 442, 55 S.Ct. 444, 79 L. Ed. 982, and insolvency is an essential prerequisite to an adjudication on the ground that the debtor had suffered or permitted a preference to be created through legal proceedings. Citizens' Banking Co. v. Ravenna Bank, 234 U.S. 360, 34 S.Ct. 806, 58 L.Ed. 1352. The verdict of the jury disposed of these two grounds urged for the adjudication of bankruptcy adversely to the contentions of the appellants. We need

not further discuss them. A verdict of the jury in a bankruptcy case has the same effect as a verdict in a law case and the District Court was without authority to enter judgment non obstante veredicto on these two grounds. C. Elliott & Co. v. Toeppner, 187 U.S. 327, 23 S.Ct. 133, 47 L.Ed. 200.

■ It was not essential to show insolvency of the debtor in charging that he had made a general assignment for the benefit of his creditors or had transferred his property with intent to hinder, delay, or defraud his creditors. George M. West Co. v. Lea Bros., 174 U.S. 590, 19 S.Ct. 836, 43 L.Ed. 1098. However, on the second ground it was necessary to show that Hardin intended to hinder, delay, or defraud his creditors Wilson Bros. v. Nelson, 183 U.S. 191, 22 S.Ct. 74, 46 L.Ed. 147. Not only was this not shown, but it is apparent there was no transfer of tangible property at all. Any rights the children would receive by the annulment of the will would vest in them by force of law as the heirs of their mother. Neither a judgment annulling the will nor an actual transfer of the property could defraud the creditors. Their mother's estate consisted of only community property and they would take it cum onere, charged with the community debts. Article 3661, Vernon's Ann.Civ.St. Tex.; American Nat. Bank v. First Nat. Bank, 52 Tex.Civ.App. 519, 114 S.W. 176; Sargeant v. Sargeant, 118 Tex. 343, 15 S. W.(2d) 589; Clemmons v. McDowell (Tex. Com.App.) 12 S.W.(2d) 955; Stone v. Jackson, 109 Tex. 385, 210 S.W. 953.

■ A "general assignment for the benefit of creditors" may be briefly defined as a transfer by a debtor of the legal and equitable title to all his property to a trustee, with authority to liquidate his affairs and distribute the proceeds equitably to his creditors. United States v. Middle States Oil Corporation (C.C.A.) 18 F.(2d) 231, 57 A.L.R. 848. The Bankruptcy Act of 1898 as originally adopted (30 Stat. 546, § 3) did not make the appointment of a receiver an act of bankruptcy. That was added by the amendment of 1903 (32 Stat. 797, § 2 [see 11 U.S.C.A. § 21]). Prior thereto it was frequently sought to procure an adjudication in bankruptcy on the ground that a receivership amounted to a general assignment. In the leading case of Vaccaro v. Security Bank (C.C.A.) 103 F. 436, opinion by the late Mr. Justice Lurton, the question was fully discussed and it

was held that an ordinary receivership, although consented to, did not have that effect. See, also, In re Empire Metallic Bedstead Co. (C.C.A.) 98 F. 981. There are other decisions to the same effect by district courts, which it is unnecessary to cite. After the amendment of 1903 it was held by the Court of Appeals for the Second Circuit that it was no longer necessary to consider whether a receivership amounted to a general assignment since the appointment of a receiver was of itself an act of bankruptcy. In re Burrell (C.C.A.) 123 F. 414. We are not aware of any case decided since then in which it has been held that the appointment of a receiver by consent was in fact a general assignment for the benefit of creditors for the purpose of adjudicating the debtor bankrupt. Appellants rely upon the following cases: United States v. Butterworth-Judson Corporation, 269 U.S. 504, 46 S.Ct. 179, 70 L.Ed. 380, and Davis v. Miller-Link Lumber Co. (C.C.A.) 296 F. 649. In each of them the question presented was whether the United States was entitled to priority of payment under the provisions of section 3466, Revised Statutes (31 U.S.C.A. § 191). Had an adjudication in bankruptcy been sought, it would have been unnecessary to consider whether the receivership was a general assignment. We do not think these and similar cases are in point. Aside from that it is apparent that the receivership in this case was not intended to have and did not have the effect of a general assignment. The receiver was given broad powers of administration, but he was not authorized to liquidate the property in whole nor to pay ordinary creditors.

 It appears that during the trial Hardin suffered an attack of illness and was compelled to leave the courtroom and receive medical attention in a nearby office. One of the grounds for a new trial was that Hardin's apparent illness then became known to the jury and had a tendency to influence them in bringing in a verdict of solvency. The District Court gave careful consideration to this question and received the testimony of some of the jurors. It was conclusively shown that the incident was not discussed by the jury and did not influence the individual jurors who knew about it. We find no abuse of discretion in overruling the motion for a new trial. Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917, and City of Amarillo v. Emery (C.C.A.) 69 F.(2d) 626, relied upon by appellants, have no application in this case.

Other objections which, although not clearly stated, may be inferred from the lengthy assignment of errors, that occupies some 20 pages of printed transcript, are clearly without merit and require no discussion.

The record presents no reversible error. Affirmed.